IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| TERRENCE D. HOLDEMAN, and the class of similarly situated individuals and entities,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL W. DEVINE, et al.,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW ON REMAND**<br><br>Case No. 2:02-CV-00365 PGC |

Following a bench trial in this matter on September 6-8, 2005, the court entered

its Findings of Facts and Conclusions of Law that Defendant, Michael W. Devine, was

not liable for any breach of fiduciary duty to the State Line & Silver Smith Casino

Employee Benefits Plan (the "Plan"). Judgment was entered in favor of Mr. Devine, and

an appeal followed. On January 17, 2007, the Court of Appeals for the Tenth Circuit

issued its opinion in *Holdeman v. Devine*.[1] The Circuit Court upheld this court's findings

in large part, but reversed and remanded for further fact-finding and conclusions

regarding four specific allegations against Mr. Devine which the court did not expressly

address in its earlier opinion.

In accordance with the Tenth Circuit's decision, this case is now before the court

for the determination of the following, limited issues: whether defendant, Michael W.

Devine, should have (1) informed the beneficiaries that the Plan was not a reliable source

---

[1] 474 F.3d 770 (10th Cir. 2007).

of health care benefits and that they might need to make alternative arrangements to obtain medical coverage; (2) resigned as the fiduciary and obtained the appointment of a person or entity who was free from a conflict of interest; (3) hired separate, outside counsel for the Plan; and (4) considered, threatened, and/or sued State Line on behalf of the Plan for unpaid contributions.  These claims are similar to other claims that the court has previously rejected.  For the reasons articulated in the body of this opinion, the court finds that the plaintiffs are not entitled to reopen discovery or to introduce additional evidence on these remanded issues and that plaintiffs have failed to prove by the preponderance of the evidence or as a matter of law that Mr. Devine is liable for breach of fiduciary duty on the basis of any of the four allegations.  The court accordingly enters judgment for the defendants.

## BACKGROUND

The present case has lengthy history and the court, as an initial matter, assumes the reader's familiarity with its prior opinion and the Tenth Circuit's opinion in *Holdeman v. Devine*.[2]  In brief, this case arose out of unpaid or underpaid medical claims incurred under a self-funded employee benefit plan maintained by State Line Hotel, Inc. and its related entities, which were the owners and operators of State Line Hotel and Silver Smith Casino in Wendover, Nevada.  Terrence D. Holdeman is a plaintiff and class representative of a group of employees who worked at the State Line Hotel and Silver Smith Casino and who were participants in or beneficiaries of State Line's Employee Benefit Plan.  Plaintiffs' class includes all plan participants who submitted medical claims to the plan for services provided between May 1, 1999 and December 8, 2001,

---

[2] *Id.*

which were either not paid at all or never fully paid prior to State Line's filing for Chapter 11 bankruptcy protection on January 10, 2002.

In its previous opinion, the court found that Mr. Holdeman, the husband of a plan participant, incurred approximately $60,000 in unpaid medical expenses, that plan participant Mr. Gerald Anderson had to pay up to $15,000 out-of-pocket for claims that should have been covered under the plan, and that State Line employee Ms. Ruth Ann Wilson was left with around $25,000 of medical expenses that the plan failed to pay.  The court also found that the individual owners of State Line, Inc. and related entities were also left with unpaid medical claims at the time of State Line's bankruptcy filing, including Mr. Devine himself.

Defendant Mr. Devine joined State Line in early January, 1998, as Executive Vice President and General Counsel.  Later he became President and then President and CEO of State Line.  Mr. Devine has conceded that he was also the fiduciary of State Line's Employee Benefit Plan at all times relevant to this case.  The class brought suit in May of 2002 against Mr. Devine in his capacity as the Plan's fiduciary (as well as against a number of other officers and directors of State Line) for violations of the Employee Retirement Security Act of 1974 (ERISA)[3] and the Racketeer Influenced and Corrupt Organizations Act (RICO).  As the pretrial litigation proceeded, this court dismissed all RICO claims, certified the asserted ERISA claims as a class action, and ultimately granted summary judgment in favor of all defendants except Mr. Devine.  A bench trial was held on September 6-8, 2005, on the limited issue of Mr. Devine's liability for breach of fiduciary duty to the Plan under ERISA.

---

[3] 29 U.S.C.A. § 1001 et seq.

After hearing all of the evidence at trial and considering the parties' arguments in their pre- and post-trial briefings, the court concluded that plaintiffs had failed to prove that Mr. Devine breached his fiduciary duties to the Plan or the plan participants and entered judgment in favor of defendant Mr. Devine.  Specifically, this court found that Mr. Devine's decisions regarding funding of the Plan were not "fiduciary" decisions constituting a breach of fiduciary duty, but rather legitimate business decisions made in his role as CEO of State Line and therefore not regulated by ERISA.  These included Mr. Devine's decisions to not prioritize funding of the Plan at various times and to authorize distributions to the owners and charitable contributions at a time when the Plan was underfunded.  On appeal from this decision, the Court of Appeals for the Tenth Circuit upheld this court's decision on these issues.[4]

On appeal plaintiffs also argued that this court failed to address eleven issues it its Findings of Fact and Conclusions of Law.[5]  Some of these issues had never been properly presented to this court.  In particular, the Court of Appeals concluded that six of these issues were not properly raised before this court and that plaintiffs had therefore waived them.[6]  The Tenth Circuit did find, however, that the issues of whether Mr. Devine should have reported State Line's underfunding of the plan to the Department of Labor, whether he should have informed the beneficiaries of the Plan that the Plan was not a

---

[4] *Holdeman*, 474 F.3d at 780.
[5] All told, plaintiffs claimed that this court failed to address the following eleven specific issues:  whether Mr. Devine should have 1) resigned as the fiduciary and obtained the appointment of some person or entity who was free from a conflict of interest; 2) resigned as CEO of State Line; 3) asked the owners to fully fund the Plan; 4) educated the owners about his role as fiduciary and how it possibly conflicted with his role as CEO; 5) hired separate, outside counsel for the Plan; 6) reported to the Department of Labor State Line's failure to properly fund the Plan; 7) considered, threatened, and/or sued State Line on behalf of the Plan for the unpaid contributions; 8) sold some property owned by State Line to fund the Plan; 9) terminated the Plan; 10) altered or adjusted existing types and levels of medical benefits; and/or 11) informed the beneficiaries that the Plan was not a reliable source of health care benefits and they might need to make alternative arrangements to obtain medical coverage.
[6] *Holdeman*, 474 F.3d at 781.

reliable source of health care benefits and thus that they should seek alternatives, whether he should have resigned as the fiduciary and obtained appointment of person or entity free from conflict of interest, whether he should have obtained outside counsel for the Plan and whether he should have considered, threatened or actually sued State Line for adequate funding of the Plan were properly raised before this court.[7]  Ultimately, *Holdeman* held that this court's failure to analyze plaintiffs' allegation that Mr. Devine breached his fiduciary duty to the Plan by not independently reporting the sponsors failure to adequately fund the Plan to the Department of Labor was a harmless error.  As for plaintiffs' allegations that Mr. Devine should have notified the plan participants regarding the inadequacy of the Plan, the Circuit remanded for a determination of whether this court had intended to uphold its earlier ruling dismissing this claim or whether it had intended for it to be revived.  If revived, this allegation -- along with the claims that Mr. Devine should have resigned as fiduciary of the Plan, should have hired outside counsel for the Plan, and should have considered suit against the sponsoring entities for funding of the Plan -- must now be expressly addressed and resolved by this court on remand.

   To aid in this task, the court asked the parties to submit supplemental briefing on all remaining issues on remand.  Because plaintiffs bear the burden of proof in this case, the court allowed them to file a reply brief in addition to their initial supplemental brief. All issues have been capably briefed by the excellent counsel representing both sides and the outstanding issues in this case are now properly before the court and ripe for decision.

---

[7] *Id.*

## PRELIMINARY ISSUES

*A.  Was Plaintiffs' Claim that Mr. Devine Breached His Fiduciary Duty by Failing to Inform Plan Participants Regarding Funding Problems with the Plan Revived Prior to Trial?*

Plaintiffs have alleged that Mr. Devine breached his fiduciary duty to the Plan and the plan participants by failing to inform the class members about State Line's continuing funding problems with the Plan and by not counseling the Plan participants to seek adequate alternatives.  However, before conclusion of trial in this matter, this court, in an order dated September 6, 2005, dismissed plaintiff's second cause of action with prejudice "to the extent that it is based on the following allegations . . . (d) misleading or failing to inform Plaintiffs regarding funding problems for the Plan."[8]  Without acknowledgment of the court's previous dismissal, plaintiffs continued to argue this claim in their closing trial brief, again asserting that Mr. Devine violated his fiduciary duties to the Plan by "not  . . . tell[ing] the Class members about the funding problems of the Plan when MGIS[9] suggested that this was necessary and appropriate."[10]  In his post-trial response brief, however, Mr. Devine clearly and unsurprisingly took the position that continued assertion of and argument on this claim were improper and should not be considered given that the court had already "dismissed with prejudice Plaintiffs' cause of action based on allegations of 'misleading or failing to inform Plaintiffs regarding funding problems for the Plan.'"[11]   And while the court ultimately agreed with Mr.

---

[8] Order on MGIS' Motion for Summary Judgment, The Individual Defendants' Renewed Motion to Dismiss and Motion for Summary Judgment, and Plaintiffs' Motion for Partial Summary Judgment, pp. 3-4.

[9] At one point in time, MGIS served as the third-party administrator of the State Line Plan.

[10] Plaintiffs' Closing Argument Regarding Liability Trial, p. 7.

[11] Response to Plaintiffs' Closing Argument Regarding Liability Trial, p. 11 n.2.

Devine's position, it unfortunately (as the Circuit noted) "did not address this argument at all in its findings of fact or conclusions of law."[12]

Given this court's silence on the issue in the post-trial order, *Holdeman* suggests that

> at a minimum it would be helpful on remand if the district court could clarify whether it intended for this allegation to be revived and resolved at trial, or whether, instead, it intended to stand by its pretrial dismissal of the allegation.[13]

The court now follows the Tenth Circuit's suggestion and clarifies that it never intended to revive any cause of action based on allegations that Mr. Devine failed to adequately inform plan participants about the Plan's condition or counsel them to seek alternative routes to health care coverage. The fact that the claim was dismissed "with prejudice" in and of itself would militate against any determination by this court that the claim was revivable. More significantly, plaintiffs never explicitly sought revival of this claim or made any legal argument for its revival. And the defendants were thus never on notice that the trial involved such a claim. As plaintiffs never requested nor offered any legal basis for revival of this claim, this court reaffirms its dismissal with prejudice of any breach of fiduciary duty claims premised on Mr. Devine's failure to inform the plan participants about funding problems with the Plan. Given this dismissal, Mr. Devine cannot be held liable for breach of fiduciary duty on the basis of these allegations.

B. *Are Plaintiffs Entitled to Reopen Discovery or Present Additional Evidence on Their Three Remaining Claims?*

Three issues now remain to be resolved that the court did not adequately address in its initial Findings of Fact and Conclusions of Law. Namely, the court must now

---

[12] *Holdeman*, 474 F.3d at 782.
[13] *Id.*

determine whether Mr. Devine breached his fiduciary duty to the Plan and to plan participants by failing to (1) resign as the fiduciary of the State Line Plan and obtain the appointment of a person or entity without a conflict of interest, (2) hire separate, outside counsel for the Plan, or (3) consider, threaten, or actually bring suit against the Plan for full funding.

Plaintiffs maintain that even if the current record before the court does not support a finding in their favor on these issues, prior to any final determination they should first be allowed

> . . . the opportunity to present expert testimony as to the standards applicable to ERISA fiduciaries acting as plan administrators of self-funded medical benefit plans and to conduct additional discovery as to the issues noted or pointed out by the Tenth Circuit.[14]

Unsurprisingly, Mr. Devine vigorously opposes any reopening of discovery or further evidentiary hearings at this stage and urges the court to resolve the outstanding issues solely on the basis of the record before it.  Mr. Devine argues that plaintiffs' stated reasons for needing to obtain further discovery could not be more vague and that the court gave plaintiffs ample time to develop and refine their case over the two-and-a-half years before trial.

This court has discretion whether to reopen a case for additional discovery or to receive additional evidence.[15]  And reopening this case for discovery or for receipt of additional evidence might be warranted if the plaintiffs were unfairly denied an adequate opportunity to develop a record earlier.  But the circumstances of this case do not suggest such a conclusion.  The court fails to understand, for example, why additional expert

---

[14]Plaintiffs' Position Paper, p. 5.
[15]*See, e.g., Morsey v. Chevron*, 94 F.3d 1470, 1477 (10th Cir. 1996).

testimony on the "standards applicable to ERISA fiduciaries acting as plan administrators of self-funded medical benefit plans" was not presented earlier in this case, particularly given that the plaintiff's breach of fiduciary duty claim dates back more than five years to May 1, 2002, when the complaint was filed. The plaintiffs have not pointed to any real barrier to presenting such evidence earlier.

Similarly, plaintiffs request that they be allowed "to conduct additional discovery as to the issues noted or pointed out by the Tenth Circuit" is inappropriate.  On appeal, plaintiffs argued that this court had failed to address, in its Findings of Fact and Conclusions of Law, eleven specific claims that they had properly raised before or at the time of trial.  The Tenth Circuit disagreed as to six of these claims, which it deemed waived for having not been properly presented.  The Circuit noted that four of the remaining claims, although properly raised, had only been brought before this court for the first time in plaintiffs' written "closing" brief after trial.[16]  And although it held that these claims were properly raised and should have been addressed by the court in its earlier opinion, the Circuit did not comment further on plaintiffs delay in waiting over two-and-half years and until after trial had concluded to raise these four issues with any specificity for the first time.

The plaintiffs' delay in articulating these claims with any specificity until after trial is perhaps explained by the evolving nature of plaintiffs' case throughout this litigation.  Whatever the reason, it is clear that the defendants had to adjust to shifting theories of liability pursued by plaintiffs, as was the court.  The consequence now, however, is that the plaintiffs failed present evidence at trial to support these claims that arose only in post-trial briefing.  Even though they have received a ruling in their favor

---

[16] *Holdeman*, 474 F.3d at 781.

that these claims were properly raised early, fairness does not suggest reopening the record in this case – after years of litigation and a full blown evidentiary bench trial. The plaintiffs had ample opportunity to be fully and fairly heard earlier in this case. In fact this court granted the plaintiffs three extensions of time in which to file their expert reports[17] and at least two extensions of the discovery cutoff date.[18] In addition, in August of 2004, the defendants filed a Motion to Dismiss and a Motion for Summary Judgment to which plaintiffs responded by filing a Motion to Amend their Complaint and a Rule 56(f) Motion for a Continuance of Discovery. In its Order of August 31, 2004, the court denied the Motions to Dismiss and for Summary Judgment and granted plaintiffs leave to amend their complaint. The court also extended the deadline for filing of expert reports for a fourth time.

The record clearly shows that the court granted numerous requests by plaintiffs for the extension of the discovery deadline and, more specifically, for the time by which their expert reports needed to be filed. Nonetheless plaintiffs never actually filed an expert report in this case. Given that plaintiffs were given considerable opportunity to prepare and file expert reports in this case throughout the pretrial process and because plaintiffs have failed to offer any persuasive argument as to why expert evidence on the standard of care for ERISA fiduciaries is somehow more critical or relevant to their case now than it was at the case's inception, their request to reopen discovery and for the court to accept additional evidence on any matter is denied. The court will look only to the extensive trial record before it to dispose of plaintiffs' remaining claims.

---

[17] *See* the Court's Revised Scheduling Order of Dec. 15, 2003; Order Approving Stipulation to Extend Certain Deadlines in the Court's Scheduling Order of March 10, 2004; and Order of Extension of Time of May 11, 2004.
[18] *See id.*

# PLAINTIFFS' REMAINING CLAIMS

*A.  Plaintiffs' Allegation that Devine's Failure to Resign as Fiduciary of the Plan or to seek a Person or Entity without a Conflict of Interest to Serve as Plan Fiduciary Constituted a Breach of Devine's Fiduciary Duty to the Plan and the Plan Participants*

Plaintiffs argue that Mr. Devine breached his fiduciary duty to the Plan and to the Plan participants by failing to seek a person or entity without a conflict of interest to serve as Plan fiduciary.  According to plaintiffs, the fact that Mr. Devine essentially admitted at trial that he was not aware of the specific duties required of an ERISA fiduciary conclusively establishes that he *must* have breached his fiduciary duties to the Plan because, they argue, no one can fulfill obligations that he or she is not even aware of.[19]  Plaintiffs also maintain that Mr. Devine never truly appreciated the conflict of interest generated by his "wearing of two hats" -- that of CEO of State Line, Inc. and Plan fiduciary both.[20]  Instead, they argue, Mr. Devine made all decisions regarding the Plan while wearing his "CEO hat" and never really picked up and put on his "fiduciary hat."[21]  Had Mr. Devine ever picked up this "other hat" and truly considered his conflict of interest solely from the perspective of a Plan fiduciary, plaintiffs believe he would have appreciated that he had a conflict of interest detrimental to the Plan and found someone else to serve as fiduciary.   That this did not happen, in plaintiffs' view, constitutes a breach of Mr. Devine's fiduciary to the Plan.

---

[19] In fact, plaintiffs raise this same argument in support of all of their remaining allegations against Mr. Devine.  *See* Plaintiffs' Position Paper, pp. 10-11.

[20] *See* Plaintiff's Position Paper, pp. 11.

[21] *Id.*

1.  Plaintiffs' *Per Se* Argument on Liability

As a general matter, ERISA imposes on a plan fiduciary the requirement that he or she exercise his duties

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . .[22]

Typically, to establish breach of fiduciary duty under ERISA, a court would look to a defendant's conduct and determine whether the conduct either did or did not meet ERISA's "prudent man" standard of care in a given instance.  Here, however, plaintiffs would have the court take a different approach to liability.  Instead of looking to the fiduciary's actual conduct (acts of commission or omission), plaintiffs instead suggest that the court should find that because Mr. Devine did not have clear knowledge of ERISA's fiduciary requirements, he must have breached them.  Or, as plaintiffs articulate it,

> If Devine failed to have an understanding of what ERISA required of him by way of fiduciary duties of loyalty and prudence, *it is axiomatic* that he could not fulfill the obligations associated with those duties.[23]

To the extent that by "axiomatic" here plaintiffs mean to suggest that their conclusion is self-evident, the court disagrees.  In fact, to the court it appears that plaintiffs would have it establish a *per se* rule of liability for fiduciaries under ERISA -- a rule that would impose liability on any fiduciary who did not know or could not state exactly what duties were required of him under the statute.

---

[22] 29 U.S.C.A. § 1104(a)(1)(B).

[23] Plaintiffs' Position Paper, p. 10 (emphasis added).

But surely one conclusion does not follow from the other.  It would clearly be wrong to conclude, for example, that just because a driver does not know the speed limit, he must be speeding.   To be sure, it is possible to argue that a driver who is unaware of the speed limit may therefore run a higher risk of inadvertently exceeding the speed limit.  But the independent fact – the speed of the car – remains to be proven.  By analogy, it is likely true that Mr. Devine ran an increased risk of breaching his fiduciary duties under ERISA because he was unaware of all those duties.  But ultimately any determination of whether Mr. Devine breached his duty to the Plan must be determined on the basis of his actual conduct under the relevant circumstances.

The court is not, therefore, persuaded that any decision on liability in this case should be premised on the kind of *per se* rule plaintiffs urge here.  The fact that Mr. Devine admitted to not knowing the duties imposed on him as a fiduciary under ERISA is simply not determinative of any remaining issue in this case.  Instead, the court's ruling will be based solely on the record evidence of what Mr. Devine actually did or did not do while serving as Plan fiduciary and the effect those decisions had on the Plan's participants.

2.   Plaintiffs' Argument that Devine Never "Put on his Fiduciary Hat" and that a Prudent Fiduciary Should Have Acted to Resolve any Conflict Between his Dual Roles

Plaintiffs also allege that Mr. Devine breached his fiduciary duty to the Plan and the plan participants because, they claim, he never did anything "to actually act in his capacity as the Plan's ERISA fiduciary."[24]  Rather, plaintiffs claim, all decisions made by Mr. Devine during the relevant time period were CEO decisions.  Had Mr. Devine assessed the situation and made decisions solely in his role as fiduciary, their argument

---

[24] *Id*. at 11.

goes, he would have recognized that being CEO of State Line, Inc. and being an ERISA

plan fiduciary at the same time constituted a conflict of interest detrimental to the Plan.

This realization, in turn, would have led Mr. Devine to at least consider resigning as Plan

fiduciary and appointing a person or entity without a conflict to serve as fiduciary for the

Plan.

      It is undisputed that at all relevant times Mr. Devine was the fiduciary of State

Line, Inc.'s employee benefit Plan and that, as such, he had a duty under ERISA to

manage the Plan in accordance with ERISA's "prudent man" standard.  It is also

undisputed that for a significant amount of this same time period, Mr. Devine also served

as CEO of State Line, Inc.  According to plaintiffs' theory, then, Mr. Devine, had he been

acting solely in his capacity as Plan fiduciary, would have discovered that this conflict of

interest was harming the Plan and would have worked to eliminate it, presumably by

resigning as fiduciary and appointing someone else.

      Much of plaintiffs' argument on this issue rests largely on their characterization of

this court's previous determination that the complained-of decisions made by Mr. Devine

did not constitute a breach of fiduciary duty because they were legitimate business

decisions taken while he was acting in his capacity as CEO of State Line, Inc. and not as

fiduciary of the Plan.  So, for example, in their briefing, plaintiffs state that this court

"found that all of Devine's actions were taken with his CEO hat on."[25]  In a limited and

unimportant sense, this is true – the court previous found that at all times relevant to the

case, Mr.Devine was, in fact, the CEO of State Line.  But it is not accurate to conclude

from this that the court also found that this in some way lead to a breach of fiduciary

duty.  Indeed, the Tenth Circuit has remanded precisely because this court had *not* yet

---

[25] *Id.* at 17.

adequately addressed plaintiffs' allegations regarding Mr. Devine's possible fiduciary breaches from failure to resign as fiduciary, to hire outside counsel, and to sue State Line for adequate plan funding.  The court's only specific ruling in this area, as the case stands today, is that all decisions made by Mr. Devine regarding *funding of the Plan*, including distributions to owners, were properly considered business, and not fiduciary, decisions and therefore not governed by ERISA.  That conclusion was not disturbed by the Tenth Circuit and is not before the court now.[26]

What does remain for this court today is to determine whether Mr. Devine's failure to resign as Plan fiduciary constitutes a breach of fiduciary duty under ERISA. Nothing in this court's prior opinion or in *Holdeman* resolves this issue, let alone definitively determines that Mr. Devine "never put his fiduciary hat on."  And the question of whether he did or did not don this or that particular cap on a given day is simply not, in the court's view, the best way to frame the issue.  Because the court, as noted earlier, bases its decision today on Mr. Devine's actual conduct -- and not his knowledge of ERISA's requirements or what "hat" he might have been wearing at what point in time -- the question for the court is whether a reasonably prudent fiduciary in Mr. Devine's shoes would have decided that he needed to resign as fiduciary and appoint another person with no conflict of interest.

Put this way, it is fairly settled law that an ERISA fiduciary can also serve as the CEO of the plan's sponsoring entity.[27]  It is also explicitly recognized that, unlike fiduciaries under the common law of trusts,

---

[26] *Holdeman*, 474 F.3d at 780.
[27] *See in re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005); *Hockett v. Sun Co., Inc.*, 109 F.3d 1515, 1522 (10th Cir. 1997).

> [u]nder ERISA . . . a fiduciary may have financial interests
> adverse to beneficiaries.  Employers, for example, can be
> ERISA fiduciaries and still take actions to the disadvantage
> of employee beneficiaries, when they act as employers
> (*e.g.*, firing a beneficiary for reasons unrelated to the
> ERISA plan), or even plan sponsors (*e.g.*, modifying the
> terms of a plan as allowed by ERISA to provide less
> generous benefits).[28]

Plaintiffs concede that the law allows plan fiduciaries to also serve as CEOs of

sponsoring entities, but maintain that nothing in the case law "resolve[s] the issue of what

happens when a conflict between the two roles arises."[29]  Plaintiffs further contend that

"Devine failed to appreciate or evaluate his conflict of interest."[30]  But, contrary to

plaintiffs' skillfully advanced arguments on this point, all ERISA ever required Devine to

do was to not wear both hats at that same time.[31]  Plaintiffs' argument appears to be that

because Mr. Devine never put on his fiduciary hat, he should be held liable.

Unfortunately, this argument misses the core issue.  At issue is not whether Mr. Devine

ever put his fiduciary hat on, but rather if he had, whether that fiduciary role would have

required him to resign because of a conflict of interest.  In other words, the issue is not

whether he did or did not view the problem from a purely "fiduciary" point of view.  The

question is whether a prudent fiduciary under ERISA would have felt the need to resign

due to the inherent conflict of interest presented by serving in dual roles.

 Plaintiffs presented no evidence to the court that a prudent fiduciary would have

resigned because of a conflict of interest, even if this fiduciary had "appreciated" the

conflict.  Plaintiffs also presented no evidence at trial upon which the court could

conclude that had Mr. Devine resigned, and an independent fiduciary been appointed,

---

[28] *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).
[29] Plaintiffs' Position Paper, p. 7.
[30] Plaintiffs' Reply in Support of Their Position Paper, p. 16.
[31] *Holdeman*, 474 F.3d at 780 (quoting *Pegram*, 530 U.S. at 225).

plaintiffs more likely than not would have fared better than they did with Mr. Devine

there.  Moreover, the very state of ERISA law on this point suggests that any

knowledgeable and prudent fiduciary appointed in Mr. Devine's place, conflicted or not,

would probably have been apprised of the fact that he had absolutely no legal obligation

to resign or refuse to serve as a plan fiduciary just because he or she also happened to

simultaneously be an agent, director or officer of the same plan's sponsoring entity.[32]

There is simply no factual evidence or legal argument to support a determination that Mr.

Devine breached his fiduciary duty to the Plan under ERISA by failing to resign as

fiduciary and hire or appoint some other person or entity with no conflict of interest.  Mr.

Devine is therefore not liable for breach of fiduciary duty on the basis of this allegation.

> B. *Plaintiffs' Allegation that Devine's Failure to Hire Outside Counsel for the Plan Constituted a Breach of Devine's Fiduciary to the Plan and the Plan Participants*

Plaintiffs next allege that Mr. Devine breached his fiduciary duty to the Plan and

to the Plan participants by failing to hire outside counsel to advise the Plan.  In their

initial Position Paper, plaintiffs essentially argue that had Mr. Devine hired outside

counsel for the Plan, this counsel "would likely have either pressed State Line to

terminate the Plan or sued State Line."[33]  Plaintiffs also argue that outside counsel

> would have insisted that distributions to the owners of over
> $1 million <u>not</u> be made while: a) the Plan was going
> unfunded; and b) State Line was losing money hand over
> fist and violating state law by paying such "dividends."[34]

---

[32] *See id.*
[33] Plaintiffs' Position Paper, p. 18.
[34] *Id.*

The record establishes that, while CEO, Mr. Devine did consult with an attorney that he referred to at trial as "outside counsel" -- a Mr. Alan Anderson. [35]   Plaintiffs offered nothing at trial to challenge Mr. Devine's identification of Mr. Anderson as "outside counsel," although in their initial Position Paper they quote an exchange from Mr. Devine's deposition during which he noted that Mr. Anderson was "retained" by State Line, Inc. and not by the Plan.[36]   Mr. Anderson was identified as outside counsel to the Plan at trial,[37] the evidence demonstrated that he was consulted on the Plan's ERISA problems[38] that he counseled Mr. Devine on what the obligations of an ERISA fiduciary were,[39] and that Mr. Anderson worked with Mr. Devine in dealing with the U.S. Department of Labor's investigation into the company's possible ERISA violations.[40] No evidence was presented at trial that Mr. Anderson did not provide proper legal advice on these issues.  Thus, for part of the relevant time period -- the period during which Mr. Devine served as CEO to State Line -- the court finds that he did seek advice from outside counsel, and that he therefore did not breach the prudent man standard of care for ERISA fiduciaries.

As for the time period *before* Mr. Devine became CEO and began consulting with Mr. Anderson on ERISA issues, the question remains as to whether ERISA required him to retain outside counsel at that time.  Unfortunately, at trial, plaintiffs presented no evidence at all to establish that a prudent fiduciary in Mr. Devine's shoes would have or should have hired outside counsel to advise the Plan.  Plaintiffs' argument that ERISA

---

[35] Trial Tr., Vol. I at 112.
[36] Plaintiffs' Position Paper, p. 15 (quoting Devine Deposition, pp. 82-83).  Whether this deposition was properly presented as trial evidence is unclear.
[37] Trial Tr., Vol. I at 112.
[38] Trial Tr., Vol. I at 178.
[39] Trial Tr., Vol. I at 112, 136.
[40] Trial Tr., Vol. II at 17.

requires the appointment of independent counsel is, therefore, purely conclusory. Plaintiffs' lack of evidence on this point is, ultimately, unsurprising given that their theory of liability based on the allegation that Mr. Devine did not retain outside counsel made its appearance for the first time only in plaintiffs' post-trial brief. In fact, up until the eve of trial, plaintiffs focused almost exclusively on proving and arguing a different theory of liability that this court squarely rejected -- namely, that plan funding decisions and distributions made to owners of the company at a time that the plan was underfunded constituted a breach of Mr. Devine's fiduciary duty to the Plan. Even at trial plaintiffs spent most of their time on issues related to plan funding and distributions. That plaintiffs shifted and added new theories of liability at the last minute does not ultimately relieve them from having to meet their burden of proof on all claims at trial.

Plaintiffs can rally no trial evidence to support the conclusion that a prudent fiduciary under ERISA more likely than not would have hired outside counsel to advise the plan. It is not enough for plaintiffs to point to the record and say that Mr. Devine admitted that he never even considered hiring counsel other than Mr. Anderson. This alone does not prove breach, because it ignores the fact that plaintiffs must still establish by a preponderance of the evidence the requisite standard of care -- i.e., proving what a prudent fiduciary in Mr. Devine's shoes would have done under the circumstances regarding a decision to retain outside counsel. On the record before the court, plaintiffs have not met this burden of proving by a preponderance of the evidence that a prudent fiduciary in Mr. Devine's position would have or would have felt obligated to hire outside counsel. The court cannot, therefore, impose liability on Mr. Devine solely on the basis of this allegation.

Plaintiffs would have the court find, however, that Mr. Devine's failure to appoint outside counsel for the Plan constituted a breach of fiduciary duty as a matter of law. Plaintiffs rely on the Seventh Circuit's decision in *Leigh v. Engle*[41] to support this argument.  As the court reads it, *Leigh* involved an unusual situation regarding the investment of plan assets by fiduciaries during a period of combat over corporate control of the plan's corporate sponsor.  Defendants were fiduciaries who made decisions regarding various stock and market investments with plan assets while they were at the same time personally involved in the corporate "takeover" battle.  Contrary to plaintiffs' assertion, the Court in *Leigh* did not hold broadly that a plan fiduciary with dual roles breaches the standard of care under ERISA by failing to hire outside counsel.  Rather, the Court found that, on the facts of that case, because (a) the investments were made by withdrawing existing funds from plan assets, (b) some of the fiduciaries' personal interests dovetailed with a certain group's interest in the corporate battle, (c) the investment decisions made almost without exception benefited "their side" in the battle and (d) no independent advice was sought regarding investment or other plan management during the time of the takeover battle, that the fiduciaries had breached their fiduciary duty of loyalty to the plan participants.[42]

*Leigh*'s somewhat unusual facts limit its applicability to cases involving the direct use of plan assets by fiduciaries for their personal benefit.  Neither situation pertains here.  Instead, it is undisputed that Mr. Devine never withdrew any funds from the Plan,[43] never failed to forward all employee contributions to the Plan,[44] and never personally benefited

---

[41] 727 F.2d 113 (7th  Cir. 1984).
[42] *Id*. at 132.
[43] Trial Tr., Vol. II at 28, 119; Vol. III at 17-18.
[44] Trial Tr., Vol. II at 28.

from his management of Plan funds. *Leigh* is therefore inapposite and that plaintiffs have

cited no other caselaw that would convince the court that a fiduciary's failure to hire

outside counsel constitutes a *per se* breach of the fiduciary's duty to the plan or the plan

participants.

Even supposing that plaintiffs had met their burden of demonstrating that Mr.

Devine's failure to retain outside counsel for the plan under the circumstances constituted

a violation of the prudent man standard of care under ERISA, plaintiffs would still not

prevail as they have failed to establish proof of loss to the Plan as a result of Mr.

Devine's alleged breach. In order to prevail on a claim for breach of fiduciary duty under

ERISA, plaintiffs must prove both a breach of fiduciary duty "*and* a *prima facie* case of

loss to the plan or ill-gotten profit to the fiduciary."[45]   In other words, Mr. Devine cannot

be held liable for breaching his fiduciary duty under ERISA unless plaintiffs prove

"'losses . . . *resulting from* each such breach' . . . ."[46]  This means that "there must be a

showing of 'some causal link between the alleged breach . . . and the loss plaintiff seeks

to recover'"[47] or, stated differently, that "[c]ausation of damages is therefore an element

of the claim, and the plaintiff bears the burden of proving it."[48]

A review of plaintiffs' briefs leaves the court with the impression that plaintiffs

believe that just because they were damaged by everything that happened with the Plan

while Mr. Devine was at its helm that they have sufficiently established a causal link

between Mr. Devine's actions and the losses to the Plan. In addition, plaintiffs think they

have proven "loss to the Plan" simply by identifying seven "reasons why they were

---

[45] *Martin v. Feilen*, 965 F.2d 660, 671-2 (8th Cir. 1992) (emphasis added).
[46] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) (quoting 29 U.S.C. § 1104(a)(1)(B)).
[47] *Id.* (quoting *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998).
[48] *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 105 (10th Cir. 1998).

harmed by Devine's failure to terminate the Plan."[49]   These reasons include plaintiffs'

allegations that had the Plan been terminated earlier than it was,

> . . . participants and beneficiaries would have been free to (1)
> find jobs that would include reliable health coverage; (2) have
> their spouses get a job with reliable health coverage; (3) find a
> second job with reliable health coverage; (4) pursue
> immediate legal action against State Line; (5) spend money
> that was being deducted from their paychecks by State Line
> for the purpose of funding its Plan on either other medical
> coverage or directly on medical expenses (or even pocketed
> the money instead of throwing it away to the Plan); (6) seek
> assistance from programs such as state or federal agencies;
> and/or (7) defer elective medical treatment.[50]

Plaintiffs proceed to characterize these "reasons" as "facts"[51] as well as to argue that it is

defendant, Mr. Devine, who bears the burden [of showing] "that the loss suffered by the

Plaintiffs did not result from his actions or omissions"[52] as opposed to plaintiffs bearing

the burden of proof on loss.

First of all, the arguments made by plaintiffs as to why they have sufficiently

proved "harm" or "damage" to themselves are just that – arguments, not facts.  And as

such, they are entirely conjectural and do little, in and of themselves, to establish proof of

loss to the plan.   It is also clear that plaintiffs fundamentally misperceive the nature of

burden-shifting in ERISA breach of fiduciary duty cases.  Plaintiffs are charged, under

applicable law, with the burden of proving breach of a duty *and* a *prima facie* case of loss

to the plan.  It is only *after* a *prima facie* case has been proven that the burden shifts to

the defendant to prove that such losses are not the result of his breach.[53]  But proof of

---

[49] Plaintiffs' Reply in Support of Their Position Paper, p. 6.
[50] *Id.* at 11.
[51] *Id.* at 6.
[52] *Id.* at 7.
[53] *Martin v. Feilen*, 965 F.2d 660, 671-2 (8th Cir. 1992) (citations omitted).

loss to the Plan is not proved by simply making conclusory arguments and conjectural statements as to what someone might have done in a given hypothetical situation.

Instead, to prove causation in this case – i.e., loss to the Plan caused by Mr. Devine's failure to hire outside counsel -- plaintiffs would first need to point to evidence in the record that would establish that more likely than not outside counsel would have considered it prudent under the circumstances to do something different than was done – to terminate the plan, to pressure State Line into terminating the Plan, to pressure State Line into fully funding the Plan and not making distributions to owners.  They would additionally need to establish that this different action would have actually benefited them – i.e., by showing that participants were more likely than not to have actually pursued any of the seven strategies plaintiffs claim would have been open to them if indeed the Plan had been terminated.

But plaintiffs can point to no record evidence supporting such positions.  Of course, anyone can argue that if only "x" had happened then things would have turned out differently and much better for all concerned.  And plaintiffs are represented here by extremely capable counsel, who have skillfully crafted (albeit in their briefs after trial) a series of possible outcomes that might have resulted if Mr. Devine had done something different.  But in fairness to both sides, the court must decide this case on the basis of the evidence introduced at the bench trial.   In order to prevail plaintiffs have to prove that a better outcome for plan participants was not only *possible*, but *probable*, a conclusion for which there is little if any support in the record.  Instead, the vast majority of the record evidence leads to the court to find that, even if Devine had hired outside counsel, this counsel would have likely determined that it was not in the best interests, long-term, of

the beneficiaries to do anything different, such as to terminate the Plan, shut off necessary payments to other creditors, or not make the needed distributions to the owners for tax purposes.   Given how aggressively, for example, State Line pursued a policy of paying off the backlog of claims once Mr. Devine joined the company[54] -- and almost zeroed out Plan liabilities at one point[55] -- it is not likely that termination of the Plan during this time period would have benefited plaintiffs.  Mr. Devine's sincere belief in and aggressive attempts to maintain the company's solvency and insure its future[56] also make it even less likely that a prudent fiduciary under the circumstances would have concluded that terminating the Plan in the long-run represented the best course of action for the beneficiaries.  There is similarly no evidence in the record to support a finding that the company would have agreed to terminate the Plan even if they had been urged to do so by outside counsel -- testimony that plaintiffs again could have but did not seek to elicit during examination of witnesses at trial or by offering the testimony of experts.

Finally, plaintiffs' contention that pressure by outside counsel would have probably led to full or at least increased funding of the Plan and/or led to a decision by the company not to make distributions to owners and that these decisions would have benefited plan participants is simply not supported by the record.  On the contrary, the record supports the conclusion – and the court finds as a matter of fact -- that such actions would have made the situation worse for plaintiffs.  Not only does the record establish that given the business' cash flow and the receipts payable it is highly unlikely that State Line would have agreed to increase funding because failure to pay other creditors may

---

[54] Findings of Fact and Conclusions of Law, p. 9 (citing Ex.3, p. 3; Trial Tr., Vol. I at 139; Trial Tr., Vol. II at 12-13; Trial Tr., Vol. III at 45).
[55] *Id.*
[56] Trial Tr., Vol. II at 97-100, 102-3.

likely have resulted in the business being shut down,[57] but the record also suggests that failure to pay creditors would have led to suspension of operations, if not to complete failure of the business.[58]   This would have likely led to plaintiffs losing their paychecks, at least temporarily, possibly their jobs,[59] and, if forced to declare bankruptcy to save the business, to participants going to the back of the bankruptcy line as unsecured creditors.[60] Similarly, it is highly unlikely that State Line would have bowed to pressure not to make distributions to the company owners as these distributions were specifically earmarked for tax purposes[61] and were addressed in forbearance agreements worked out between State Line and its creditors to allow the business to stay open.[62]   Again, even if State Line had made the distributions under pressure from counsel for the plan -- which, the court repeats, it finds unlikely under the circumstances as detailed on the record -- the court views it as highly unlikely, based on the evidence, that plaintiffs would have benefited. Instead, the more likely result would have been for the business to be foreclosed on and for the business to have declared bankruptcy.[63]   If foreclosed, plaintiffs would not only have lost their health insurance, but also their livelihood at a time when the casino economy was taking a very hard hit due to reduced travel and tourism after the 9-11 attacks.[64]   The other very likely outcome, on this record, is again that State Line would have declared bankruptcy at which point participants would have had little or no hope of ever recouping out-of-pocket expenditures on health care as they would immediately

---

[57] Findings of Fact and Conclusions of Law, p. 8 (citing Trial Tr., Vol. I at 129-30).
[58] Trial Tr., Vol. II at 62-63.
[59] Trial Tr., Vol. I at 130.
[60] Trial Tr., Vol. II at 48, 50-51.
[61] Findings of Fact and Conclusions of Law, p. 12 (citing Ex. 8, p. 4; Trial Tr., Vol. I at 173; Trial Tr., Vol. II at 70, 72-73, 141-42).
[62] *Id.*, p. 12-13 (citing Trial Tr., Vol. I at 161, 168, 170, 181; Trial Tr., Vol. II at 71-73, 141).
[63] Trial Tr., Vol. II at 62-63.
[64] Trial Tr., Vol. I at 130; *see also*, *Holdeman*, 474 F.3d at 774; Findings of Fact and Conclusions of Law, p. 9.

have become unsecured creditors who would have been unlikely to have ever seen any form of priority in a bankruptcy proceeding.[65]

In light of the court's findings and analysis, the court concludes that plaintiffs have failed to meet their burden of proof in establishing losses to the Plan resulting from Mr. Devine's alleged breach.  While plaintiffs have capably advanced their arguments in their most recent legal pleading, they were not really pursuing this claim at trial and thus failed to introduce evidence at trial in support of it.  As a result, the court cannot find that any of their recent conjectures rise from the level of the possible into the realm of the probable.  The record instead establishes – and the court finds as a fact -- that it is more likely than not that Mr. Devine's actions in this case,  including not hiring an outside counsel, did not cause losses to the Plan.

     c.  *Plaintiffs' Allegation that Devine's Failure to Consider, Threaten, or Actually Sue the Sponsoring Entities for Funding of the Plan Constituted a Breach of Devine's Fiduciary Duty to the Plan and the Plan Participants*

Plaintiffs' final and most speculative claim alleges that by not considering, threatening or actually suing State Line on behalf of the company for full funding of the Plan, Mr. Devine is liable for breach of his fiduciary duty under ERISA to the Plan and to the plan participants.  In the court's view, this final claim fails, ultimately, for the same reasons as plaintiffs' claim that Mr. Devine should have hired outside counsel -- namely, for lack of sufficient evidence.

As with plaintiffs' previous claim, in order to prove that Mr. Devine breached his fiduciary duty to the Plan by failing to consider, threaten or pursue legal action against the Plan for full funding, plaintiffs must first establish, on the basis of evidence, what a prudent fiduciary would have done under the same or similar circumstances.  Mr. Devine

---

[65] Trial Tr., Vol. II at 50-52.

admitted, at trial, that he never considered bringing suit against State Line for full funding of the plan,[66] but as noted before, this fact alone does not establish breach.  A review of the evidence again demonstrates that plaintiffs never presented any testimony as to what a prudent fiduciary would have done had he been in Mr. Devine's position.  Absent any evidence on the record as to the applicable standard of care for ERISA fiduciaries in Mr. Devine's circumstances, as well as in the absence of any caselaw which would suggest that ERISA imposes an requirement on fiduciaries such as Mr. Devine to at least contemplate if not outright sue a company for full funding of its benefit plan, Mr. Devine is not liable for breach of his fiduciary duty under ERISA on the basis of any allegation that he should have considered, threatened, or actually sued State Line in an attempt to obtain full funding of the Plan.

This result would be the same even if plaintiffs' had proven that Mr. Devine's failure to take legal action against State Line constituted a breach of fiduciary duty. Because even if plaintiffs had proven a breach of duty on Mr. Devine's part, they failed to establish that the Mr. Devine's actions in regard to this issue likely resulted in any losses to the Plan.  As with their preceding claim, plaintiffs had the burden of proving by a preponderance of the evidence that the losses sustained by the Plan were actually caused by Mr. Devine's failure to evaluate or take legal action against State Line.

In order to establish losses to the Plan from Mr. Devine's conduct, plaintiffs would need to convince the trier-of-fact that had Mr. Devine considered, threatened, or filed suit against State Line that the beneficiaries would have likely ended up better off than they actually ended up being in this case.  Unfortunately, while plaintiffs most recent pleadings contain well-argued scenarios, at trial plaintiffs offered no evidence to support

---

[66] Findings of Fact and Conclusions of Law, p. 8 (citing Trial Tr., Vol. I at 135-37).

their conjecture that legal action against State Line by Mr. Devine on behalf of the Plan would have likely have bettered the Plan's, and ultimately the Plan participants' position. Such evidence was possible, either from expert testimony or by eliciting evidence relevant to this issue from State Line officers during their testimony.  But because the plaintiffs did not really discover this theory until their post-trial briefs, they simply did not support it at trial.

        As a result, the bulk of the evidence now before the court points to the likely outcome that had Mr. Devine considered or threatened legal action against State Line, State Line would still not have made the decision to fully fund the Plan at the expense of paying creditors who had the power to shut down their business.[67]  Similarly, it is unlikely from this record that State Line would have decided to fully fund the Plan, under threat of litigation, when such a decision would have likely forced State Line into bankruptcy -- at which point there is no evidence to suggest that plaintiffs would have received anything.[68]  The evidence in this case also supports the finding that had Mr. Devine actually sued State Line on behalf of the Plan and the plan participants for full funding of the plan, State Line would have likely filed bankruptcy.[69]  When State Line ultimately did file bankruptcy, plan participants became unsecured creditors and received nothing.[70]  It seems abundantly clear from the record that State Line's bankruptcy filing would more than likely result, no matter what its timing, in complete cessation of any further funding going to the plan and no chance for participants to ever obtain recovery as unsecured creditors in a bankruptcy proceeding.

---

[67] *Id.* at 13-14 (citing Trial Tr., Vol. II at 87, 92-94).
[68] Trial Tr., Vol. 1 at 130;  Trial Tr., Vol. II at 62; Trial Tr., Vol. II at 50-51.
[69] Trial Tr., Vol. I at 130; Trial Tr., Vol. II at 62.
[70] Trial Tr., Vol. II at 50-51.

Based on the trial evidence, the court finds that plaintiffs have failed to prove it more likely than not that Mr. Devine's actions in not considering, threatening or actually filing suit against State Line for full funding resulted in any losses to the Plan. Because plaintiffs have failed to meet their burden of proof on causation and on breach, Mr. Devine is not liable for breach of his fiduciary duty under ERISA for failing to have considered, threatened, or actually pursued litigation against the company to secure full funding of Plan.

**CONCLUSION**

In light of the length of this opinion, it may be helpful for the court to briefly summarize its conclusions on remand as follows:

The court reaffirms its earlier dismissal of plaintiffs' claim that Mr. Devine breached his fiduciary duty under ERISA by failing to inform Plan participants of funding problems with Plan or to counsel them to seek adequate alternatives because the claim was previously dismissed with prejudice and because plaintiffs never properly sought its revival. The court also denies plaintiffs' request to reopen discovery and/or for the court to take additional evidence in this case. The court gave plaintiffs ample opportunity prior to trial to obtain expert and other evidence in this case and plaintiffs have offered no persuasive reason as to why they should be given more time to develop additional evidence on their breach of fiduciary duty claim -- a claim first asserted in their initial complaint -- at this late stage of protracted proceedings.

Plaintiffs' claim for breach of fiduciary duty against Mr. Devine for failure to resign as fiduciary of the Plan and appoint some other person or entity without a conflict of interest fails for lack of evidence. Plaintiffs did not prove at trial, by a preponderance

of the evidence, that a reasonably prudent fiduciary in Mr. Devine's position would have determined the most proper action to be to resign as Plan fiduciary and appoint an unconflicted party.  The court also rejects any *per se* rule that would hold that because an ERISA fiduciary does not know precisely what his duties are under the statute, he is therefore liable for breach of those duties.  Plaintiffs' argument that Mr. Devine should be held liable because he never "put on his fiduciary hat" when making decisions regarding the plan also lacks merit.  Mr. Devine is, accordingly, not liable for breach of fiduciary duty under ERISA for failure to resign as plan fiduciary or to appoint a fiduciary free from all conflict of interest.

Plaintiffs' allegation that Devine's failure to hire outside counsel for the Plan constituted a breach of Devine's fiduciary to the Plan and the Plan participants fails for lack of supporting evidence.  Plaintiffs failed to meet their burden of establishing, by a preponderance of the evidence, that Mr. Devine either breached his fiduciary duty or that any such alleged breach was the cause of losses to the Plan.  Mr. Devine is not liable for breach of his fiduciary duties under ERISA for not hiring outside counsel to advise him on the Plan.

Finally, plaintiff's allegation that Devine's failure to consider, threaten, or actually sue State Line, Inc., to obtain full funding of the benefit Plan is unsupported by the evidence.  Plaintiffs were unable to prove it more likely than not that Mr. Devine either breached his duty as Plan fiduciary or that the alleged breach actually resulted in losses to the Plan.  Mr. Devine is therefore not liable to plaintiffs for breach of fiduciary duty under ERISA for failure to contemplate, threaten or file suit against State Line for full funding of the Plan.

In reaching these conclusions, the court is not unmindful of the significant financial losses that plan participants have suffered.  But these losses, while obviously quite damaging, did not stem from any violation of ERISA but rather from other unfortunate business circumstances.

Judgment will accordingly be entered in favor of defendant on all claims.

DATED this 2nd day of November, 2007.

_____
PAUL G. CASSELL
District Court Judge